IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

IN RE:

ACANDS, INC.                            Bankr. Case No. 02-12687 (JKF)
                                        Adv. No. 10-53702


IN RE:

SPECIALTY PRODUCTS HOLDING              Bankr. Case No. 10-11780 (JKF)
CORP.                                   Adv. No. 10-53721


IN RE:

KAISER ALUMINUM CORP.                   Bankr. Case No. 02-10429 (JKF)
                                        Adv. No. 10-53719


IN RE:

OWENS CORNING                           Bankr. Case No. 00-03837 (JKF)
                                        Adv. No. 10-53720


IN RE:

USG CORP.                               Bankr. Case No. 01-020894 (JKF)
                                        Adv. No. 10-53712


ACANDS ASBESTOS SETTLEMENT
TRUST; KAISER ALUMINUM &
CHEMICAL CORPORATION ASBESTOS
PERSONAL INJURY TRUST; OWENS
CORNING/FIBREBOARD ASBESTOS
PERSONAL INJURY TRUST; and
UNITED STATES GYPSUM ASBESTOS
PERSONAL INJURY SETTLEMENT
TRUST,

1

and

TRUST ADVISORY COMMITTEES FOR
ACANDS ASBESTOS SETTLEMENT
TRUST, KAISER ALUMINUM &
CHEMICAL CORPORATION ASBESTOS
PERSONAL INJURY TRUST, OWENS
CORNING/FIBREBOARD ASBESTOS
PERSONAL INJURY TRUST, and
UNITED STATES GYPSUM ASBESTOS
PERSONAL INJURY SETTLEMENT
TRUST,

and

HON. DEAN M. TRAFELET (RET.),
LEGAL REPRESENTATIVE FOR
FUTURE CLAIMANTS AGAINST THE
UNITED STATES GYPSUM ASBESTOS
PERSONAL INJURY SETTLEMENT
TRUST,

Plaintiffs,

v.

HARTFORD ACCIDENT INDEMNITY
CO.; FIRST STATE INSURANCE CO.;
NEW ENGLAND INSURANCE
COMPANY; NATIONAL UNION FIRE
COMPANY OF PITTSBURGH, PA;
AMERICAN HOME ASSURANCE CO.;
GARLOCK SEALING TECHNOLOGIES,
LLC; SPECIALTY PRODUCTS HOLDING
CORP.; DELAWARE CLAIMS
PROCESSING FACILITY, LLC; and
VERUS CLAIMS SERVICES, LLC,

Defendants.

2

## MEMORANDUM OPINION

Before the Court are Defendants' Motions to Dismiss the above-captioned adversary proceedings.[1] Plaintiffs filed their "Verified Complaint for Declaratory and Injunctive Relief" (hereinafter, the "Complaint") pursuant to Rules 7001(7), 7001(9) and 7065 of the Federal Rules of Bankruptcy Procedure and § 105 of the Bankruptcy Code "seeking construction and interpretation of the Plans of Reorganization in the captioned cases . . . and the corresponding Trust Distribution Procedures . . . pursuant to which the Trusts operate, and seeking also an injunction barring Defendants from seeking certain discovery from the Trusts in excess of that permitted by the Plans and TDPs." Adv. No. 10-53719, Adv. Doc. No. 1, at 3, ¶ 1.

Plaintiffs subsequently filed a "Motion for Preliminary Injunction" pursuant to Fed. R. Bankr. P. 7065 and 11 U.S.C. § 105 for "preliminary injunctive relief enjoining the continuation of the discovery against the Trusts described in the Complaint and all discovery of a similar nature until such time as the Court has ruled on the issues raised in the Complaint." Motion for Preliminary Injunction, Adv. No. 10-53719, Adv. Doc. No. 3, at 1.

---

[1] A separate Motion to Dismiss was filed by each of the following Defendants at Adv. No. 10-53719: National Union Fire Insurance Company of Pittsburgh, PA (hereinafter, "National Union") and American Home Assurance Company (hereinafter, "American Home") at Adv. Doc. No. 29; Hartford Accident and Indemnity Company, First State Insurance Company, and New England Insurance Company (collectively, "Hartford") at Adv. Doc. No. 30; Specialty Products Holding Corporation (hereinafter, "Specialty Products") at Adv. Doc. No. 33; and Garlock Sealing Technologies LLC (hereinafter, "Garlock") at Adv. Doc. No. 42.

Specialty Products was voluntarily dismissed, without prejudice, from these proceedings by the Plaintiffs, pursuant to Fed. R. Civ. P. 41 and Fed. R. Bankr. P. 7041. Notice of Dismissal, Adv. No. 10-53719, Adv. Doc. No. 83.

All remaining matters have been consolidated for administrative purposes under the Adversary Proceeding No. 10-53719 (JKF) of the Kaiser Aluminum Corporation, et al. bankruptcy case at No. 02-10429 (JKF). Order Consolidating Related Adversary Proceedings, Adv. No. 10-53719, Adv. Doc. No. 78. For purposes of clarity, citations to all documents on the record refer to the appropriate docket number in Adversary Proceeding 10-53719.

As a preliminary matter, before considering the merits of each Party's argument, the court must first determine whether it has continuing jurisdiction over the Plaintiffs. The Plaintiffs are statutory trusts and committees created pursuant to the trust agreements in each Plaintiff's respective bankruptcy case. Plaintiffs correctly assert that "[t]his Court presided over the bankruptcies that resulted in the creation of each of the Plaintiff Trusts, and reviewed and confirmed the Plans and related documents that established and govern them." Complaint, Adv. No. 10-53719, Adv. Doc. No. 1, at 7, ¶ 27. Plaintiffs contend that this Court has continuing jurisdiction to hear the matters set forth in the complaint pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(1). *Id.* at 3, ¶ 2. After a close examination of the record before us, as well as the applicable statutes and case law, we find that this court does not have subject matter jurisdiction over the matters before us and, accordingly, the Motions to Dismiss must be GRANTED.

*Subject Matter Jurisdiction*

The subject matter jurisdiction of a bankruptcy court is determined by 28 U.S.C. §§ 1334 and 157. *In re Resorts Int'l, Inc.*, 372 F.3d 154 (3d Cir. 2004). Section 1334 provides that "the district courts shall have original and exclusive jurisdiction of all cases under title 11" (28 U.S.C. § 1334(a)) and that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). "Bankruptcy court jurisdiction potentially extends to four types of title 11 matters, pending referral from the district court: '(1) cases under title 11, (2) proceeding arising under title 11, (3) proceedings arising in a case under title 11, and (4) proceedings related to a case under title 11.'" *In re Resorts*, 372 F.3d at 162 (citations omitted). A proceeding that arises in a case under title 11 is referred to as "core" and a proceeding that is related to a case under title 11

4

is referred to as "non-core."[2] *Id.*

While § 1334 establishes the jurisdictional boundaries of a district court over bankruptcy cases and proceedings, it does not, by itself, vest any authority in the bankruptcy courts. *In re Seven Fields Dev. Corp.*, 505 F.3d 237, 253 (3d Cir. 2007). The bankruptcy court's authority is established by 28 U.S.C. § 157:

> (a) Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.

28 U.S.C. § 157(a). The *Seven Fields* court explained that:

> Section 157 provides for two levels of authority that may be invested in a bankruptcy judge depending upon into which of two categories a case or proceeding falls. The two categories are (1) "all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11," 28 U.S.C. § 157(b)(1)

---

[2]To determine whether we have subject matter jurisdiction over this matter, it is not necessary for this court to determine whether this is a "core" proceeding:

> "[W]hether a particular proceeding is core represents a question wholly separate from that of subject-matter jurisdiction." *In re Marcus Hook* [*Dev. Park, Inc.*], 943 F.2d [261,] 266 [(3d Cir. 1991)]. Under 28 U.S.C. § 157, a bankruptcy court might have jurisdiction over a proceeding but still might not be able to enter final judgments and orders. *Id.* Non-core "related-to" jurisdiction is the broadest of the potential paths to bankruptcy jurisdiction, so we need only determine whether a matter is at least "related to" the bankruptcy. *Donaldson* [*v. Bernstein*], 104 F.3d [547,] 552 [(3d Cir. 1997)].

*In re Resorts Int'l*, 372 F.3d at 163. "In other words, a determination of whether a matter is core or non-core is unnecessary in an inquiry of whether there is federal jurisdiction over a bankruptcy proceeding, as both categories of cases are within federal jurisdiction and the determination only impacts on the question of whether a bankruptcy court has the authority to enter final judgments and orders under section 157." *In re Seven Fields Dev. Corp.*, 505 F.3d 237, 257 (3d Cir. 2007).

(collectively known as "core proceedings"), and (2) "a proceeding that is not a core proceeding but that is otherwise related to a case under title 11," 28 U.S.C. § 157(c)(1) ("non-core proceedings"). *See [In re] Combustion Eng'g, [Inc.,]* 391 F.3d [190,] 225; *Resorts,* 372 F.3d at 162.

*In re Seven Fields,* 505 F.3d at 254.

<u>*"Arising In" Jurisdiction*</u>

Plaintiffs assert that the bankruptcy court has "arising in" jurisdiction over the current matter and urge the court to apply a "but for" standard to make such a determination. To support the application of the "but for" standard, the Plaintiffs cite two cases, neither of which were decided by the Third Circuit: *In re A.H. Robins Co.,* 86 F.3d 364 (4th Cir. 1996), and *Simmons v. Johnson, Curney & Fields, P.C.,* 205 B.R. 834, 840 (Bankr. W.D. Tex. 1997). Regardless of the fact that both cases are not binding on us, we find nothing to indicate that the Third Circuit has adopted, or would adopt, such a standard. Instead, the Third Circuit asks whether the proceeding, "by its nature, could arise only in the context of a bankruptcy case." *In re Resorts,* 372 F.3d at 163 (citing *In re Guild & Gallery Plus,* 72 F.3d 1171, 1178 (3d Cir. 1996) (citation omitted)). "[C]laims that 'arise in' a bankruptcy case are claims that by their nature, not their particular factual circumstance, could only arise in the context of a bankruptcy case." *Stoe v. Flaherty,* 436 F.3d 209, 218 (3d Cir. 2006) (citing *Halper v. Halper,* 164 F.3d 830, 836 (3d Cir. 1999)). At the heart of the matter before us is a discovery dispute that could routinely occur in any type of litigation. Furthermore, as these matters arise post-confirmation, both the reorganized debtors and the trusts are separate entities that can sue and be sued. *See, e.g., Falise v. American Tobacco Co.,* 241 B.R. 48, 62 (E.D.N.Y. 1999) ("A trust created to effectuate a bankruptcy plan should be treated as is any other entity with the right to sue or be sued. Unless that entity comes within

6

some special statutory exception, its position as a plaintiff in a federal court must be justified under diversity or federal question jurisdiction"). Thus, it is impossible to say that the nature of the matters before us now can arise only in the bankruptcy context.

*"Related To" Jurisdiction*

The Plaintiffs next contend that the court has "related to" jurisdiction over this matter. Prior to confirmation of a debtor's plan of reorganization, "related to" jurisdiction exists if "'the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.'" *In re Resorts*, 372 F.3d at 164 (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d. Cir. 1984)). However, the standard becomes more stringent post-confirmation. "[B]ankruptcy court jurisdiction 'must be confined within appropriate limits and does not extend indefinitely, particularly after the confirmation of a plan and the closing of a case.'" *In re Resorts*, 372 F.3d at 164 (quoting *Donaldson v. Bernstein*, 104 F.3d 547, 553 (3d Cir. 1997)). "Though courts have varied the standard they apply post-confirmation, the essential inquiry appears to be whether there is a close nexus to the bankruptcy plan or proceeding sufficient to uphold bankruptcy court jurisdiction over the matter." *In re Resorts*, 372 F.3d at 166-67.

The Third Circuit, in *Resorts*, provided a helpful examination of the jurisdictional issues unique to a situation involving a continuing trust:

> Whether a matter has a close nexus to a bankruptcy plan or proceeding is particularly relevant to situations involving continuing trusts, like litigation trusts, where the plan has been confirmed, but former creditors are relegated to the trust res for payment on account of their claims. To a certain extent, litigation trusts by their nature maintain a connection to the bankruptcy even after the plan has been confirmed. The question is how close a connection warrants post-confirmation bankruptcy jurisdiction. Matters that affect the interpretation, implementation, consummation, execution, or administration of the confirmed plan

7

> will typically have the requisite close nexus.  Under those
> circumstances, bankruptcy court jurisdiction would not raise the
> specter of "unending jurisdiction" over continuing trusts.

*In re Resorts*, 372 F.3d at 167.  The *Resorts* court examined several cases from various

jurisdictions in making its determination that the bankruptcy court lacked subject matter

jurisdiction of the matter before it:  *Falise v. Am. Tobacco Co.*, 241 B.R. 48 (E.D.N.Y. 1999)

(finding that the bankruptcy court lacked subject matter jurisdiction where the trust sought to

recover from tobacco companies for their role in contributing to asbestos-related illnesses because

the resolution of the dispute would have no impact on any integral aspect of the bankruptcy plan

or proceeding); *In re A.H. Robins Co.*, 86 F.3d 364 (4th Cir. 1996) (finding that subject matter

jurisdiction existed where it was necessary to interpret the plan's accompanying documents to

determine whether it was unreasonable to charge standard attorneys' fees out of the pro rata

distribution); *In re Haws*, 158 B.R. 965 (Bankr. S.D. Tex. 1993) (finding that subject matter

jurisdiction did not exist where the only nexus to the bankruptcy case was that the plaintiff was a

liquidating trustee representing a group of creditors appointed pursuant to the confirmed plan of

reorganization);  *In re Pegasus Gold Corp.*, 296 B.R. 227 (D. Nev. 2003) (finding that subject

matter jurisdiction existed where a reclamation services corporation created under a

reorganization plan failed to perform the purpose for which it was formed, thus undermining the

plan's objectives for reorganization and the payment of creditors).  After a careful consideration

of those cases, the *Resorts* court rejected the argument that the estate was affected because the

Litigation Trust was a continuation of the estate, finding that the sole fact that a trust's assets

were once assets of the estate is insufficient to confer subject matter jurisdiction on a bankruptcy

court post-confirmation:

> The Litigation Trust's connection to the bankruptcy is not identical to that of the estate . . . . [T]he Litigation Trust was created in part so that the Plan could be confirmed and the debtor freed from bankruptcy court oversight without waiting for the resolution of the litigation claims. . . . Given the limited jurisdiction of non-Article III bankruptcy courts, jurisdiction does not extend necessarily to all matters involving litigation trusts.

*In re Resorts*, 372 F.3d at 169.[3] The Court also stated that "the potential to increase assets of the Litigation Trust and its beneficiaries does not necessarily create a close nexus sufficient to confer 'related to' bankruptcy court jurisdiction post-confirmation" and noted that "if the mere possibility of a gain or loss of trust assets sufficed to confer bankruptcy court jurisdiction, any lawsuit involving a continuing trust would fall under the 'related to' grant. Such a result would widen the scope of bankruptcy court jurisdiction beyond what Congress intended for non-Article III bankruptcy courts." *Id.* at 170.

Here, too, with respect to all Defendants, we find that the matters raised in Plaintiffs' Complaint do not have the requisite close nexus to the bankruptcy cases or proceedings therein, or related thereto, to confer on us "related to" jurisdiction. First, and most importantly, the discovery dispute raised by the Plaintiffs in these adversary proceedings does not involve the interpretation or effectuation of the Plan. While the Plaintiffs argue that the dispute involves the interpretation of the confidentiality provisions of the TDP, that fact does not approach the level necessary to establish a close nexus to the bankruptcy proceedings, as confidentiality issues often

---

[3]We acknowledge that the Third Circuit's analysis in *Resorts* regarding the Litigation Trust is, in part, specific to the factual circumstances and plan of reorganization in that case. While the litigation trust in *Resorts* is not identical to the statutory trusts created under § 524(g) of the Bankruptcy Code, the basic purpose of each is the same: both are bodies created to take on and administer the liabilities of the bankruptcy estate and both are funded with assets for that purpose. Thus, we find the analysis of *Resorts* to be helpful to the matter pending.

arise in the context of discovery disputes. Furthermore, as explained in more detail *infra*, the subpoenas served on the Plaintiffs were issued in other jurisdictions in matters that are not pending in this court. The issuing courts are the appropriate fora to determine the scope of the subpoenas, and the courts in which actions are pending are best suited to resolve any specific discovery disputes, including consideration of confidentiality concerns any party to the litigation may raise.[4] *Ancillary Jurisdiction*

Plaintiffs also assert that, "[s]eparately and in addition to the jurisdiction granted by 28 U.S.C. § 1334, bankruptcy courts also have inherent jurisdiction, sometimes called ancillary jurisdiction, to 'interpret and enforce their own orders wholly independent of the statutory grant.'" Reply in Support of Plaintiffs' Motion for Preliminary Injunction, Adv. No. 10-53719, Adv. Doc. No. 70, at 9 (citations omitted). As applied to this case, we reject this argument because, as explained *supra*, Plaintiffs' discovery dispute does not involve the interpretation or enforcement of the Plans or the Confirmation Orders issued by this court.

*Retention of Jurisdiction Provisions*

---

[4]For example, as explained by the United States District Court for the Eastern District of Pennsylvania in *Parker v. Learn the Skills Corp.*, 2004 U.S. Dist. LEXIS 21498, at *3 (E.D. Pa. 2004), in reference to a matter before it:

> [T]his court, which sits in the Eastern District of Pennsylvania, may quash subpoenas issued by the United States District Court for the Eastern District of Pennsylvania. *See* Fed. R. Civ. P. 45(c)(3)(A). However, in the absence of statutory authorization, this Court does not have the authority to meddle with, enforce, or quash a subpoena issued by another court in another jurisdiction. *See In re Seal Case*, 329 U.S. App. D.C. 374, 141 F.3d 337, 341 (D.C. Cir. 1998) (explaining that "only the issuing Court has the power to act on its subpoenas . . . and nothing in the rules even hints that any other court may be given the power to quash or enforce them").

10

The Plaintiffs first contend that "this Court has retained exclusive jurisdiction post-confirmation to '[i]ssue injunctions, enforce the injunctions contained in the Plan and Confirmation Order, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation, implementation, or enforcement of the Plan or Confirmation Order'"and to "'[d]etermine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement entered into or delivered in connection with the Plan, the Disclosure Statement, or the Confirmation Order.'" Complaint, Adv. No. 10-53719, Adv. Doc. No. 1, at 3-4, ¶ 3. However, as explained by the Third Circuit in *Resorts*, while retention of jurisdiction provisions will be given effect, neither the parties nor a bankruptcy court can independently create subject matter jurisdiction:

> Subject matter jurisdiction "cannot be conferred by consent" of the parties. *Coffin v. Malvern Fed. Sav. Bank*, 90 F.3d 841, 854 (3d Cir. 1996). Where a court lacks subject matter jurisdiction over a dispute, the parties cannot create it by agreement even in a plan of reorganization. *In re Continental Airlines, Inc.*, 236 B.R. 318, 323 (Bankr. D. Del. 1999), *aff'd*, 2000 WL 1425751 (D. Del. September 12, 2000), *aff'd*, 279 F.3d 226 (3d Cir. 2002). Similarly, if a court lacks jurisdiction over a dispute, it cannot create that jurisdiction by simply stating it has jurisdiction in a confirmation or other order. *Id.*; *accord United States Trustee v. Gryphon at the Stone Mansion*, 216 B.R. 764, 769 (W.D. Pa. 1997) ("A retention of jurisdiction within a confirmed plan does not grant a bankruptcy court jurisdiction."), *aff'd*, 166 F.3d 552 (3d Cir. 1999).

*In re Resorts*, 372 F.3d at 161.

*Abstention*

11

National Union, American Home and Hartford seek abstention. Because we have determined that we do not have subject matter jurisdiction to resolve this dispute, it is not necessary for us to consider whether abstention is either appropriate or necessary in this instance.

*Discussion*

Because numerous Defendants were named in this adversary proceeding, and because, before being consolidated, the same complaint was filed in numerous bankruptcy cases, we find it necessary to briefly address certain facts, situations and arguments specific to certain individual Defendants. However, we note that, as to many of the issues and claims raised by the Plaintiffs with respect to a specific defendant, we will not consider these additional arguments as we have already determined that this court does not have the requisite jurisdiction to do so.

*Defendants Verus Claims Services and Delaware Claims Processing Facility ("DCPF")*

Both Verus[5] and DCPF[6] are service providers and vendors acting as agents to the Trusts. Verus is the claims processing facility for the ACandS Asbestos Settlement Trust and the Kaiser Aluminum and Chemical Corporation Asbestos Personal Injury Trust. Complaint, Adv. No. 10-53719, Adv. Doc. No. 1, at 6, ¶ 24. DCPF is the claims processing facility for the Owens Corning Fibreboard Asbestos Personal Injury Trust and the United States Gypsum Asbestos Personal Injury Settlement Trust. *Id.* at ¶ 23. As stated in the Complaint:

---

[5]Verus is "a limited liability company organized and existing under the laws of New Jersey with a principal place of business in New Jersey." Complaint, Adv. No. 10-53719, Adv. Doc. No. 1, at 6, ¶ 24.

[6]DCPF is "a limited liability company organized and existing under the laws of Delaware with a principal place of business in Delaware." Complaint, Adv. No. 10-53719, Adv. Doc. No. 1, at 6, ¶ 23.

> In several cases, the discovery has been directed in whole or in part to the Trusts' claims processing facilities, Verus and DCPF. The claimant information in the hands of those entities, which are service providers and vendors to the Trusts, remains the property of the Trusts. Verus and DCPF have been named here as nominal defendants so that the declaratory and injunctive relief sought in this action may be directed to and binding upon such claims processors.

Complaint, Adv. No. 10-53719, Doc. No. 1, at 14, ¶ 44.

We have already determined that this court does not have the authority to exercise subject matter jurisdiction over this matter and, therefore, does not have the authority to issue injunctive and declaratory relief with respect to Verus and DCPF.

*Subpoenas Issued by (1) National Union and American Home, and (2) Hartford*

National Union and American Home initially issued separate subpoenas to Verus and DCPF on October 1, 2010. Motion to Dismiss for Lack of Jurisdiction, or in the Alternative to Abstain, Adv. No. 10-53719, Adv. Doc. No. 29, at 2. The subpoenas were issued from the District Courts for the District of New Jersey and the District of Delaware, respectively, even though the civil actions to which the subpoenas relate were pending in the United States District Court for the District of Maryland, because Verus and DCPF were located in and production would be made from those jurisdictions. *Id.* at 2-3. After a technical objection to the notice requirement of Fed. R. Civ. P. 45(b)(1), the subpoenas were reissued to both Verus and DCPF on October 22, 2010. *Id.* at 3.

The procedural posture of Hartford's litigation is more complex. Hartford as a defendant, is involved in insurance coverage litigation in the Superior Court of New Jersey. Memorandum of Law in Support [of] Hartford's Motion to Dismiss (hereinafter, "Hartford's Memorandum"), Adv. No. 10-53719, Adv. Doc. No. 31, at 4, ¶ 8. The plaintiffs in that action are Federal Mogul

13

Products, Inc. and Federal Mogul U.S. Asbestos Personal Injury Trust. *Id.* In connection with

that litigation, Hartford, on May 25, 2010, served a subpoena on Verus a claims administrator for

14 asbestos trust, including two trusts that are Plaintiffs in this adversary proceeding: the

ACandS Trust and the Kaiser Trust. *Id.* at 5, ¶ 10. After Verus objected to the subpoena,

Hartford filed a motion to compel. *Id.* at 6, ¶ 12. On October 27, 2010, the same day that the

New Jersey court referred Hartford's motion to compel to Judge Douglas K. Wolfson, acting as a

special discovery master, the ACandS Trust commenced this adversary proceeding. *Id.* at 6, ¶¶

12-13. Subsequently, when presented with the issue of whether he should defer ruling on the

motion to compel pending the resolution of this adversary, "Judge Wolfson observed (as no party

contested) that he continues to have jurisdiction to hear Hartford's pending motion [to compel],

notwithstanding the filing of this action." *Id.*, at 6-7, ¶ 14.

　　As we explained, *supra*, we are not the appropriate forum in which to address any issues

related to a subpoena which was not issued in our jurisdiction. Plaintiffs have alternate fora in

which to raise objections to the issued subpoenas. Nonetheless, we must address a unique issue

that arises with respect to the subpoenas served upon the ACandS trust by both National Union

and American Home, together, and Hartford.

　　In ACandS's confirmed Plan, National Union, American Home and Hartford each qualify

as a Protected Party.[7] As such, each is bound by the ACandS's Plan and Trust Distribution

---

[7]Section 1.120 of the Plan defines a Protected Party as ". . . any of the Released parties . .
. ." In turn, a Released Party includes each of the "Released Non-Debtor Parties," (§ 1.125)
which are defined to include each of the "Settling Asbestos Insurance Companies" (§ 1.124).
Finally, a Settling Asbestos Insurance Company means "any Asbestos Insurance Company that
has entered into an Asbestos Insurance Settlement Agreement . . ." (§ 1.135). Bankr. No. 02-
12687, Doc. No. 3109. Exhibit 2 to the Second Amended Plan of Reorganization lists the
Asbestos Insurance Settlement Agreements and indicates: (1) a Settlement Agreement and

Procedures (hereinafter, "TDP"), through the court's Confirmation Order in that case.[8] This court has subject matter jurisdiction to interpret and implement the Plan and its administration. The TDP includes a provision regarding the "Confidentiality of Claimants' Submissions." That provision, § 6.5 of the TDP, provides as follows:

> All submissions to the Trust by a holder of a Trust Claim of a proof of claim form and materials related thereto shall be treated as made in the course of settlement discussions between the holder and the Trust, and intended by the parties to be confidential and to be protected by all applicable state and federal privileges, including but not limited to those directly applicable to settlement discussions. The Trust will preserve the confidentiality of such claimant submissions, and shall disclose the contents thereof only, with the permission of the holder, to another trust established for the benefit of asbestos personal injury claimants pursuant to section 524(g) and/or section 105 of the Bankruptcy Code or other applicable law, to such persons as specifically authorized in writing by the holder, or **in response to a valid subpoena of such materials issued by the Bankruptcy Court**. Furthermore, the Trust shall provide counsel for the holder a copy of any such subpoena immediately upon being served. **The Trust shall on its own initiative or upon request of the claimant in question take all necessary and appropriate steps to preserve said privileges before the Bankruptcy Court and before those courts having appellate jurisdiction related thereto.** . . .

---

Release by and among ACandS, Granite State Insurance Company and National Union, approved by court order on June 3, 2008 (Bankr. No. 02-12687, Doc. No. 3360); (2) a Confidential Settlement Agreement between ACandS and American Home, dated June 5, 2002; and (3) an Insurance Settlement Agreement between ACandS and Hartford Financial Services Group, Inc., dated July 18, 2002.

[8]ACandS's Second Plan of Reorganization was confirmed by order of this court on May 8, 2008. Order Confirming ACandS's Second Plan of Reorganization Dated November 19, 2007, Bankr. No. 02-12687, Doc. No. 3309; Second Plan of Reorganization of ACandS, Inc.under Chapter 11 of the United States Bankruptcy Code, Bankr. No. 02-12687, Doc. No. 3109.

Asbestos Settlement Trust Distribution Procedures, Bankr. No. 02-12687, Doc. No. 3109, Exhibit

5 Part 2, at 49-50, § 6.5 (emphasis added). According to this provision of the TDP, to which

National Union and Hartford agreed as Protected Parties under the Plan, all subpoenas related to

claimants' submissions to the ACandS Trust are to be issued by the bankruptcy court.[9][10] The most

analogous construct for this agreement is a forum selection clause, agreed upon for this limited

purpose. Thus, if this provision is enforceable as a forum selection clause, or otherwise

enforceable in any way, the parties should not have used the subpoena power of the Superior

Court of New Jersey, regardless of the fact that the documents requested in the subpoena will be

produced in New Jersey, and instead, should have used this Bankruptcy Court. The ACandS

Protected Parties, in essence, agreed to a forum selection clause for purposes of issuance of the

subpoenas covered thereby. Courts will normally uphold forum selection clauses. In *In re Exide*

*Techs.*, 544 F.3d 196 (3d Cir. 2008), the Third Circuit explained:

---

[9]The court is not persuaded by National Union's argument that it is not obligated under the ACandS confirmed Plan. Further Memorandum in Support of Motion to Dismiss for Lack of Jurisdiction or in the Alternative to Abstain, and in Opposition to Plaintiffs' Motion for a Preliminary Injunction, Adv. No. 10-53719, Doc. No. 72. National Union and American Home bargained, in their settlements, to be Protected Parties and to be freed from further litigation. The subpoena language in the confidentiality provision of the Plan is not taking away any substantive right of either National Union or American Home. Rather, it is merely deciding the forum in which one specific act takes place: issuing subpoenas to the Trust.

As Protected Parties as defined in the Plan, they have necessarily agreed to the terms of the Plan by their participation as parties in interest. Each received a benefit from their status as a Protected Party, including releases and an injunction from further litigation. Thus, if the agreements are enforceable, National Union, American Home, and Hartford are bound by the agreement to issue subpoenas through the Bankruptcy Court.

[10]We note that, while the bankruptcy court may be the appropriate court to issue an injunction related to claimants' submissions to the ACandS Trust under the agreement reached by the parties to ACandS's confirmed Plan, this does not necessarily mean that the bankruptcy court is the appropriate jurisdiction to litigate all issues surrounding the subpoena and related discovery. Subject matter jurisdiction must still exist under §§ 1334 and 157.

16

> A forum-selection clause is presumptively valid and will be
> enforced unless the party objecting to its enforcement demonstrates
> that enforcement of the clause would violate a strong public policy
> of the forum. *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*,
> 709 F.2d 190, 202 (3d Cir. 1983); *M/S Breman v. Zapata Off-Shore
> Co.*, 407 U.S. 1, 10, 92 S. Ct. 1907, 32 L. Ed. 2d 513 (1972).
> Where the claims at issue are not "core" bankruptcy matters, this
> rule applies equally to Chapter 11 debtors. *See [In re] Diaz
> Contracting, [Inc.]*, 817 F.2d [1047,] 1051-53 [(3d Cir. 1987)]; *In
> re Kamine/Besicorp Allegany, L.P.*, 214 B.R. 953, 972-74 (Bankr.
> D.N.J. 1997).

544 F.3d at 218, n.15.

Because of the express language of § 6.5 in the ACandS Trust Distribution Procedures, it

appears that it is this bankruptcy court that has jurisdiction to issue subpoenas related to the

discovery of claimants' submissions. However, the exact nature of § 6.5 - that is, whether it is to

function as a forum selection clause - is unclear. Also, if it, indeed, functions as a forum selection

clause, we must determine whether National Union, American Home and/or Hartford have - or

can - meet their burden of demonstrating that the forum selection clause is unenforceable. Thus, a

scheduling conference will be before this court in order to assist in the determinations with regard

to *only* the Plaintiff ACandS Trust and the Defendants National Union, American Home and

Hartford.

We emphasize, also, that this issue arises *only* with respect to the two subpoenas issued on

Verus regarding the ACandS Trust by (1) the District Court of New Jersey upon the request of

National Union and American Home, and (2) the Superior Court of New Jersey upon the request

of Hartford. It does *not* change our determination with respect to the subpoenas issued by those

same courts on Verus regarding the Kaiser Trust. First, although the Kaiser bankruptcy case

remains open before us, those proceedings are post-confirmation and, importantly, post-effective

17

date, which means that the Trust has already been funded. Second, the Trust Distribution

Procedures in Kaiser's confirmed Plan do not include language expressly requiring subpoenas to

be issued by this court.[11] Thus, our analysis with respect to subject matter jurisdiction, *infra*,

---

[11]Notably, the Plaintiffs assert that the language of the confidentiality provision included in the Kaiser TDP also reflects that it is the bankruptcy court which is to issue subpoenas related to the discovery of claimants' submissions. The Plaintiffs cite to the Kaiser Aluminum & Chemical Corporation Third Amended Asbestos TDP § 6.5, dated November 20, 2007. Complaint, Adv. No. 10-53719, Adv. Doc. No. 1, at 9, ¶ 34. However, this version of the Asbestos TDP is *not* the version of the Asbestos TDP that was approved by this court in its Order Confirming the Second Amended Joint Plan of Reorganization of Kaiser Aluminum Corporation, Kaiser Aluminum & Chemical Corporation and Certain of Their Debtor Affiliates, as Modified. Bankr. No. 02-10429, Doc. No. 8225. This court's order approving Kaiser's Second Amended Joint Plan of Reorganization of Kaiser Aluminum corporation, Kaiser Aluminum & Chemical Corporation and Certain of Their Debtor Affiliates incorporated the language of the Asbestos Distribution Procedures - *not* the Third Amended Asbestos Trust Distribution Procedures. *See* Second Amended Plan, Bankr. No. 02-10429, Doc. No. 7312, Exhibit 1.1(34), Pt. 1. Furthermore, the Asbestos Distribution Procedures as approved by this court contained no confidentiality provision whatsoever. The insurers, including National Union, American Home, and Hartford, were not parties to any modifications made to the TDP after confirmation of the Plan. Although the Trustees have authority to modify trust provisions to assure that beneficiaries are paid in equivalent percentages over the life of the Trust, there is no authority to bind non-participating third parties to modifications in matters that were previously brought before the court and adjudicated. The forum selection nature of the provision in question requires that it be agreed upon by the parties to the contract. The court is unaware whether or how the insurers were made party to these modifications to the TDP's when, by the terms of the TDP's, the Trustees may modify certain provisions with the consent of the Trust Advisory Committee and the Future Claimants' Representative. The insurers are not mentioned. Thus, they are not bound by this modification to the Third Amended Asbestos TDP.

This same rationale applies to the modifications to the Owens Corning TDP, as Owens Cornings' Sixth Amended Joint Plan of Reorganization was confirmed by the court on September 26, 2006 (Bankr. No. 00-03837, Doc. No. 19366), and the TDP was modified later by the Trustee to require all subpoenas to be issued by the bankruptcy court. This action was taken over three years after confirmation on February 10, 2010. Complaint, Adv. No. 10-53719, Adv. Doc. No. 1, at 9, ¶ 34. Similarly, the USG Corporation's First Amended Joint of Plan of Reorganization was confirmed by this court on June 16, 2006 (Bankr. No. 01-02094, Doc. No. 11688), and the TDP was modified almost four years later, on March 29, 2010, to include such language. Complaint, Adv. No. 10-53720, Adv. Doc. No. 1, at 9, ¶ 34. This court was not involved in these modifications.

18

remains applicable and we do not have subject matter jurisdiction over the subpoenas issued with respect to the Kaiser Trust.

*Defendant Garlock*

Garlock is currently involved in its own bankruptcy proceedings in the Western District of North Carolina[12] and those proceedings involve its own discovery disputes, including a Rule 2004 Motion filed by Garlock on October 13, 2010. Memorandum of Law in Support of Garlock's Motion to Dismiss, Adv. No. 10-53719, Adv. Doc. No. 43, at 2. The Rule 2004 Motion was served on seven claims processing facilities that handle claims for twenty five asbestos personal injury trusts. *Id.* Plaintiffs filed this action against Garlock and the actions against the other Defendants on October 27, 2010. *Id.* Garlock contends that "[t]he Plaintiffs' Actions ask this Court to decide the very issues before the *Garlock* Court on the Garlock [Rule 2004] Motion, namely whether 'the discovery sought by [Garlock] from the Trusts is beyond the scope of proper discovery.'" *Id.* at 3 (citing Complaint, Adv. No. 10-53719, Adv. Doc. No. 1, at 21, ¶ a).

This court is in no position to make discovery decisions regarding Garlock when its bankruptcy is pending before a court in a different jurisdiction. Both the Plaintiffs and Garlock have asserted additional arguments in support of their respective position. However, because we have determined that we do not have the necessary jurisdiction to consider this matter, we do not address those arguments.

---

[12]Garlock filed its voluntary petition on June 5, 2010, along with affiliates Garrison Litigation Management Group, Ltd. and the Anchor Packing Company. *In re Garlock Sealing Technologies LLC*, Bankr. Case No. 10-31607 (Bankr. W.D.N.C.).

*Specialty Products Holding Corporation "Specialty Products"*

At the time the Complaint and Motion for Preliminary Injunction were filed by the

Plaintiffs, Specialty Products had not yet served subpoenas on any of the Plaintiff Trusts.  Instead,

Specialty Products and Bondex International, Inc.[13] had filed a Federal Rule of Bankruptcy

Procedure Rule 2004 Motion before this court, seeking discovery of information from certain the

Plaintiffs and the claims processing facilities in possession of that information.  Initially,

Specialty Products had objected to Plaintiffs' request for a preliminary injunction on the grounds

that the pendency of the Rule 2004 Motion precluded injunctive relief.  Response of Specialty

Products Holding Corp. in Opposition to Motion for Preliminary Injunction, Adv. No. 10-53719,

Adv. Doc. No. 28, at p. 2, ¶ 2.  On December 28, 2010, the Plaintiffs voluntarily dismissed,

without prejudice, all claims against Specialty Products.  Notice of Dismissal of Specialty

Products Holding Corp., Adv. No. 10-53719, Adv. Doc. No. 83.  Thus, we need not address any

issues as to Specialty Products in this proceeding.

*Conclusion*

We recognize the desire of the Trusts to have a uniformly applicable principle regarding

their obligations to comply with discovery requests, some of which seem to far exceed reasonable

requests calculated to lead to relevant and admissible evidence in a lawsuit.  Nonetheless, this

court has no jurisdiction to create a "one size fits all" peremptory rule of discovery.

Plaintiffs' Complaint is DISMISSED and Plaintiffs' Motion for Preliminary Injunction is

DENIED as to the following Plaintiffs: Kaiser Aluminum & Chemical Corporation Asbestos

---

[13]Bondex is not named as a Defendant in the proceedings currently before us.  Response of Specialty Products Holding Corp. in Opposition to Motion for Preliminary Injunction, Adv. No. 10-53719, Adv. Doc. No. 28, at 1, n.1.

20

Personal Injury Trust; Owens Corning/Fibreboard Asbestos Personal Injury Trust; United States

Gypsum Asbestos Personal Injury Trust; the Trust Advisory Committees for the Kaiser

Aluminum & Chemical Corporation Asbestos Personal Injury Trust, the Owens

Corning/Fibreboard Asbestos Personal Injury Trust, and the United States Gypsum Asbestos

Personal Injury Settlement Trust; and the Hon. Dean M Trafelet (Ret.), Legal Representative for

Future Claimants against the United States Gypsum Asbestos Personal Injury Settlement Trust.

With respect to Plaintiff ACandS Trust, a scheduling conference will be set to consider

whether the language of § 6.5 of the TDP, requiring subpoenas to be issued by the bankruptcy

court, functions as a forum selection clause and, if so, whether on that basis or on any other basis,

the clause is enforceable.

An appropriate order will be issued.


_Judith K. Fitzgerald_
Judith K. Fitzgerald
United States Bankruptcy Judge